UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| STOKES SPENCER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case Number: 4:14-cv-01121-JHE |
| | ) |
| CAROLYN W. COLVIN, ACTING | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**[1]

Plaintiff Stokes Spencer ("Spencer") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for a period of disability and disability insurance benefits ("DIB"). (Doc. 1). Spencer timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

**I. Factual and Procedural History**

Spencer was a forty-eight-year-old male at the time of the Administrative Law Judge's ("ALJ") decision. (Tr. 19 & 119). He has a high school education, (tr. 18), and worked for the Gadsden Housing Authority for 18 years as a maintenance mechanic responsible for "general maintenance," (tr. 32).

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 10).

Spencer filed a Title II application for a period of disability and DIB on September 21, 2011, alleging disability beginning August 15, 2011. (Tr. 119). The Commissioner denied his application on November 10, 2011, (tr. 66), and Spencer filed a written request for a hearing before an ALJ on January 17, 2012, (tr. 75-76). A video hearing before an ALJ was held on February 15, 2013. (Tr. 25). The ALJ denied the disability claim on March 7, 2013. (Tr. 19). Spencer sought review by the Appeals Council, (tr. 5), but it declined his request on April 28, 2014, (tr. 1-3). On that date, the ALJ's decision became the final decision of the Commissioner. On June 12, 2014, Spencer initiated this action. (Doc. 1).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

ALJ's determination of the proper legal standards to be applied.  *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3]  The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a).  To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found that Spencer meets the insured status requirements of the Social Security Act through December 31, 2016, and that he did not engage in substantial gainful activity from the alleged onset date of August 15, 2011.  (Tr. 13).  At Step Two, the ALJ found Spencer to have the following severe impairments:  status post three vessel coronary artery bypass graft, coronary artery disease, obesity, obstructive sleep apnea, chronic obstructive pulmonary disease ("COPD"), and osteoarthritis of the right knee.  (*Id.*).  At Step Three, the ALJ found Spencer does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 14).

Before proceeding to Step Four, the ALJ determined Spencer's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments.  *See* 20 C.F.R. §

404.1545(a)(1). The ALJ determined Spencer has the RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a), with the following specified limitations:

> [He] can push and pull foot controls bilaterally no more than occasionally; [he] can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; [he] can have no more than occasional exposure to extreme heat or cold and no more than occasional exposure to irritants, such as dusts, fumes, gases, and chemicals; and [he] can never work around hazardous, moving machinery or unprotected heights.

(Tr. 14).

At Step Four, the ALJ determined that, through the date last insured, Spencer is unable to perform any past relevant work. (Tr. 17). At Step Five, the ALJ determined that, based on Spencer's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy he could perform. (Tr. 18-19). Therefore, the ALJ determined Spencer has not been under a disability, as defined in the Social Security Act, and denied his claim. (Tr. 19).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Spencer contends generally that the ALJ's decision must apply the correct legal standards and be supported by substantial evidence. (Doc. 13 at 9). Next, he appends a laundry list of arguments without always making clear which are discrete issues and which are merely support for other issues. (*Id.* at 9-13). Specifically, he states the ALJ erred in his failure to properly

5

evaluate the credibility of Spencer's subjective testimony consistent with the Eleventh Circuit pain standard, (*id.* at 9-10), but only briefly touches on the ALJ's rationale for his credibility determination, (*id.* at 11).  Then, he goes on to briefly mention the ALJ's failure to consider the disability determination of Spencer's former employer's long-term disability carrier, (*id.* at 11); the error of the ALJ's sedentary RFC determination, (*id.* at 11); the ALJ's failure to consider Spencer's strong work history, (*id.* at 12); and the insufficiency of the ALJ's findings on the effect of the combination of Spencer's impairments, (*id.*).  The following analysis attempts to combine them under the relevant issues.

### A. The ALJ Properly Applied the Eleventh Circuit Pain Standard, and There is Substantial Evidence to Support His Decision

The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Subjective testimony supported by medical evidence satisfying the standard is sufficient to support a finding of disability.  *Id.*  However, the ALJ may still make a credibility determination on the claimant's statements about the intensity and effect of that pain.  *See Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Hogard v. Sullivan*, 733 F.Supp. 1465, 1469 (M.D. Fla. 1990).  The ALJ's adverse credibility determination must be supported by "explicit and adequate reasons," *Holt*, 921 F.2d at 1223, and substantial evidence, *see Foote*, 67 F.3d at 1561-62.  An ALJ's clearly articulated credibility determination will not be disturbed if supported by substantial evidence.  *Petteway v. Comm'r of Soc. Sec.*, 353 Fed.

App'x. 287, 288 (11th Cir. 2009).

When evaluating the credibility of a plaintiff's statements regarding the intensity, persistence, or limiting effects of his symptoms, the ALJ considers all available subjective and objective evidence. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); S.S.R. 96-7p. This may include the nature of a plaintiff's symptoms, the effectiveness of medication, his method of treatment, his activities, and any conflicts between a plaintiff's statements and the rest of the evidence. 20 C.F.R. §§ 404.1529(c)(3) & (4), 416.929(c)(3) & (4). In articulating reasons for discrediting subjective testimony, an ALJ need not refer to every piece of evidence in the record as long as the decision is not a broad rejection which leaves a district or appellate court unable to conclude that the medical condition was considered as a whole. *Petteway*, 353 Fed. App'x. at 288.

Here, the ALJ concluded Spencer's medically determinable impairments could be reasonably expected to cause his alleged symptoms; however, he discredited Spencer's subjective testimony regarding the intensity, persistence and limiting effects of his pain he claimed rendered him unable to work. (Tr. 15).

The only time Spencer clearly addresses the credibility analysis is when he states "[t]he fact that the claimant may have had a relatively normal stress test in July 2011 does not mean that his chest pain and leg pain where they took the vein is not truthful or credible." (Doc. 13 at 10). If this were the only basis for the ALJ's decision, Spencer would be right; however, the ALJ pointed to substantial evidence in the record—including a State medical consultant's evaluation of Spencer's medical history and his admitted ability to perform daily chores and leisure activities—to support his conclusion.

Although Spencer claimed in his hearing testimony with the ALJ he is in constant pain, (tr. 38-39), the only medication Spencer has been prescribed to relieve this alleged pain is

Lortab, which he takes for knee pain with no complaints or mentioned side effects, (tr. 53).

In his analysis of Spencer's testimony of activities, the ALJ noted that Spencer "has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (Tr. 17). The ALJ found Spencer has been able to not only participate in everyday activities, such as personal care and grooming, cooking, and light chores, but also more extensive activities, such as driving his daughter to school and extracurricular activities, going to high school football games, and playing cards at a community recreational center a few times a week. (Tr. 17) (citing tr. 43-44, 51, & 348).

Additionally, the ALJ gave the opinion of the State agency medical consultant, Dr. Robert Heilpern, partial weight in determining the extent of Spencer's abilities. (Tr. 17). According to Dr. Heilpern, whose conclusions are based on all the medical evidence included in Spencer's file, Spencer should be able to stand or walk (with normal breaks) for a total of about six hours in an eight-hour workday and sit (with normal breaks) for a total of about six hours in an eight-hour workday. (Tr. 342). As reflected in the RFC, Spencer is limited somewhat in his ability to climb, kneel, crawl, operate hazardous machinery, and be exposed to extreme temperatures or fumes, odors, gases, and chemicals. (Tr. 343-45).

To the extent Spencer tries to undermine the ALJ's credibility analysis with the arguments the ALJ did not mention the long-term disability carrier's disability determination or Spencer's alleged strong work history, these arguments are ineffective. Spencer's assertion the ALJ did not consider or gave these pieces of evidence no weight is speculation, and he cites no authority evidence of a private insurer's disability determination or of a strong work history must be specifically mentioned and rejected for an ALJ to state a proper credibility analysis. *See Kelley v. Colvin*, No. 7:14-CV-00336-SLB, 2015 WL 4426239, at *5 (N.D. Ala. July 20, 2015)

("Past performance of heavy work does not demonstrate that [claimant's] testimony was credible, and the ALJ was not required to discuss it on the record."); *Washington v. Colvin*, No. CV513-092, 2014 WL 2505656, at *5 (S.D. Ga. June 3, 2014) (affirming ALJ's credibility finding over claimant's assertion ALJ did not consider strong work history); *cf. Falcon v. Heckler*, 732 F.2d 827, 831 (11th Cir. 1984) (requiring great weight be given to the findings of other state and federal agencies applying the same disability definition).

He also contends at one point that his use of compression socks to reduce edema is consistent with his testimony he has to lie down a lot during the day. (*Id.* at 12). However, the standard is not whether any evidence supports Spencer's position or credibility, but whether there is "such relevant evidence as a reasonable person would accept as adequate to support" the ALJ's contrary conclusion. *Bloodsworth*, 703 F.2d at 1239. If so, the Court will not "substitut[e] its own judgment for that of the [Commissioner]." *Walden*, 672 F.2d at 838. Here, the ALJ properly applied the Eleventh Circuit pain standard, and substantial evidence supports his decision to discredit Spencer's subjective testimony of disabling pain.

### B. The ALJ Properly Considered Spencer's Obesity in Combination With His Other Impairments

Spencer also argues the ALJ's opinion does not properly address his impairments in combination. (Doc. 13 at 11-12). When "a [plaintiff] has alleged a multitude of impairments, a claim for social security benefits may lie even though none of the impairments, considered individually, is disabling." *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984). Therefore, "an ALJ must make specific and well-articulated findings as to the effect of the combination of impairments when determining whether an individual is disabled." *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987).

Spencer's argument begins with the acknowledgement the ALJ considered the obesity in

9

combination with Spencer's COPD and osteoarthritis in determining Spencer should be limited to sedentary work, followed by Spencer's assertion that, because of his "extreme obesity," substantial evidence does not support the ALJ's conclusion. (Doc. 13 at 11). Spencer provides no support for this conclusory assertion. He cites Social Security Ruling ("S.S.R.") 02-01p, which recognized obesity can cause exertional and postural limitations, and briefly mentions his inability to lose weight due to his other impairments. (*Id.* at 11-12). However, nothing Spencer cites from S.S.R. 02-01p is inconsistent with the ALJ's opinion, and the S.S.R.'s statement obesity can make other impairments worse and cause effects such as pain does not require a finding it worsens those impairments or causes such pain to the point it prevents the claimant from working. It merely states "the effects of any symptoms (such as pain or fatigue) that could limit functioning" will be considered, S.S.R. 02-01p, which the ALJ did, (tr. 16-17).

Lastly, he contends (and his argument appears to hinge on) that, although the ALJ acknowledged his obesity could combine to exacerbate his other impairments, the ALJ did not "explain how such an individual [with combined obesity and osteoarthritis] would be able to stay on task despite his pain for a full 8 hour workday 5 days a week." (Doc. 13 at 12). The issue with this statement is that it contains the implicit assumption the ALJ's finding of both obesity and osteoarthritis implies pain of a disabling degree. "However, the mere existence of . . . impairments does not reveal the extent to which they limit [his] ability to work or undermine the ALJ's determination in that regard." *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005).

As Spencer admits, the ALJ clearly and explicitly considered Spencer's diagnosed morbid obesity as a factor contributing to his evaluation that Spencer is able to perform sedentary work. (Doc. 13 at 8) ("The ALJ concluded that given the claimant's obesity combined

with his chronic obstructive pulmonary disease and his osteoarthritis of the right knee, it was reasonable to limit Mr. Spencer to sedentary work, with the further limitations included in the ALJ's residual functional capacity determination."). The ALJ noted in his opinion that the objective evidence of the record shows that Spencer has been counseled by his primary care physician to lose weight, and that despite his compliance with diet and exercise, he has been unable to do so. (Tr. 15). The ALJ also explicitly factored obesity's effect on Spencer's COPD and osteoarthritis into his conclusion Spencer should be limited to a sedentary exertion level and have no more than occasional exposure to extreme heat and cold or to irritants, such as dusts, fumes, gases, and chemicals. (Tr. 16).

In addition, one of the other specific findings the ALJ made after considering Spencer's obesity in combination with his other impairments was that Spencer's pain was not as significant as Spencer claimed it was and did not prevent him from working at the sedentary level with the stated limitations. (Tr. 15-17). As discussed above, he based this on the conservative treatment (which prescribed only Lortab), evidence of daily activities inconsistent with that expected from the stated pain level, and the opinion of Dr. Heilpern, who based his conclusions on all of the medical evidence included in Spencer's file and stated that, in an eight-hour workday, Spencer should be able to stand or walk (with normal breaks) for a total of about six hours and sit (with normal breaks) for a total of about six hours. (Tr. 16-17).

The ALJ made sufficiently specific and articulated findings, buttressed by substantial evidence, to support his conclusion Spencer could, with the limitations imposed by the RFC, maintain work at a sedentary exertional level.

### VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative

record and memoranda of the parties, the decision of the Commissioner of Social Security denying Spencer's claim for a period of disability and disability insurance benefits is **AFFIRMED** and this action **DISMISSED WITH PREJUDICE.**

DONE this 22nd day of September 2015.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE